UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX ROSSITTO,<br><br>    Plaintiff,<br><br>    v.<br><br>SAFEWAY, INC.,<br><br>    Defendant. | Case No. 12-cv-05857-MEJ<br><br>**ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 18 |

## I.    INTRODUCTION

Pending before the Court is Defendant Safeway, Inc.'s Motion for Summary Judgment, or Alternatively, Partial Summary Judgment (Dkt. No. 18). Plaintiff Max Rossitto has filed an Opposition (Dkt. No. 32), and Defendant has filed a Reply (Dkt. No. 37). On November 21, 2013, the Court held a hearing on the Motion. After carefully considering the parties' briefs, controlling authorities, and oral argument, the Court **GRANTS** Defendant's Motion.

## II.    BACKGROUND

Except where noted, the following facts are undisputed.

Plaintiff suffers from Wolf Parkinson White Syndrome ("WPW"), a medical condition that can cause periodic episodes of rapid heartbeat, known as tachycardia. Plaintiff's Joint Statement of Material Facts ("JSF") ¶2, Dkt. No. 30. WPW symptoms can include heart palpitation, dizziness, light headedness, fainting, tiring easily after exercise, anxiety, chest pain, chest tightness, difficulty breathing, and sudden death. *Id.* ¶3. Although Plaintiff takes daily medication to manage his WPW, he can still experience periodic symptoms. *Id.* ¶4. He can control these symptoms by performing a "Vaso-Vagal" maneuver, which involves squatting or lying on the floor, which triggers the heart to return to its normal rate and rhythm. *Id.* ¶5. Plaintiff's WPW symptoms occur infrequently; a couple times a year. *Id.* ¶6.

Plaintiff was employed by Defendant as a deli clerk from October 2005 through August 2011 and worked at Defendant's Santa Rosa, California store. *Id.* ¶1. According to Plaintiff, when he interviewed for the deli clerk position in 2005, he informed Santa Rosa store manager Victor Rossi about his medical condition and that he took medication for WPW, but indicated that the condition would not be a problem with respect to performing his job duties. *Id.* ¶7. Plaintiff did not provide Defendant with any medical records related to his WPW at the time of his hire. *Id.* ¶9. Plaintiff's WPW did not require accommodation for Plaintiff to perform his job as a deli clerk, nor did it restrict his ability to perform those duties. *Id.* ¶8.

In March 2006, Plaintiff fainted at work due to an onset of WPW symptoms and was taken by ambulance from the Santa Rosa store to the hospital. *Id.* ¶10. The store manager who assisted Plaintiff after he fainted was not Rossi. Def. Separate Statement of Material Facts, Ex. 2(a) (Rossitto Depo. 58:12-59:2)), Dkt. No. 18. However, Plaintiff is "sure he probably" told Rossi the cause of his fainting, but does not remember the basis for that conversation beyond letting Rossi know that he was ok. JSF ¶11. The medical forms Plaintiff provided on his return to work after the 2006 incident do not mention WPW. *Id*. ¶12.

On August 3, 2011, shortly before his shift began, Plaintiff found a $50 bill on the floor in front of the cash register in the deli section of the store. *Id.* ¶13. Plaintiff told his coworker, Will Pierce, who was serving customers, that he had found the bill. *Id.* ¶14. Plaintiff put the money in his pocket. *Id.* ¶15.

Defendant's Employee Theft and Found Property policies require that employees who find money or property turn it in to management, the customer service counter, or a cashier. *Id.* ¶16. Plaintiff could have fulfilled his obligation under the policy by putting the money in the till or turning it over to customer service or to a store manager. *Id.* ¶17.

Plaintiff claims that as he stopped to pick up the money, he began to experience WPW symptoms. *Id.* ¶18. He testified that the symptoms initially were not severe, and so he went to the front of the store to purchase a soda. *Id.* ¶19. As he went to the front of the store, he passed within 15 feet of the customer service counter, but did not turn the money in. *Id.* ¶20. While in line at the check-out to purchase his soda, Plaintiff claims that he began to experience dizziness

2

1  and chest pains. *Id.* ¶21. He did not turn the money over to the checker. *Id.* ¶22.

2        Plaintiff then went to the employee break room and from there to a rest room. *Id.* ¶23.
3  According to Plaintiff, he went to the rest room so that he could perform the Vaso-Vagal
4  maneuvers in a closed stall in an attempt to control his symptoms. *Id.* While in the restroom,
5  Plaintiff transferred the money from his pocket to his wallet. *Id.* He testified that the WPW
6  symptoms subsided after about 30 minutes and he turned the money into the head clerk, Brian
7  McFadden. *Id.* ¶25. Plaintiff did not mention any onset of WPW symptoms when he turned the
8  money over to McFadden. *Id.* ¶26. After Plaintiff returned the money, he worked his full shift
9  without any flare-ups of his WPW. *Id.* ¶27. He did not seek medical attention. *Id.* ¶28.

10       The $50 Plaintiff picked up and put in his pocket had been reported missing from the deli
11 till at the store before he turned it over to McFadden. *Id.* ¶29. McFadden was alerted to the
12 missing money by a phone call from Tanisha Reed, whose job it was to audit the till. *Id.* ¶30.
13 Reed initially contacted McFadden over the "voip" in-store phone system. *Id.* ¶¶31, 35. Reed
14 explained to McFadden that the deli till was missing $50, and she asked him to look at the video
15 surveillance footage to see what might have happened. *Id.* McFadden spoke with Pierce, who
16 McFadden recalled told him that he had seen Plaintiff pick some money off the ground. *Id.* ¶32.
17 In reviewing the video footage on the monitor in the manager's office, McFadden saw a bill drop
18 on the floor as Reed was removing the till from the deli counter cash register. *Id.* ¶33. The video
19 then showed Plaintiff (who was visible at the sandwich bar) shortly after Reed left going to the
20 back of the deli where the money dropped and picking up the bill. *Id.* ¶34. At least some of the
21 contacts between McFadden, Reed, and the deli counter were over what is known as the "voip,"
22 which are broadcast over a loudspeaker that anyone in the store can hear, including individuals
23 who might be in the employee break room. *Id.* ¶35.

24       McFadden then reported the incident to Rossi. *Id.* ¶36. Rossi, in turn, contacted Forrest
25 Brandon, Defendant's loss prevention investigator, who initiated an investigation. *Id.* ¶37. As
26 part of his investigation, Brandon obtained written statements from Pierce, Reed, and McFadden.
27 *Id.* ¶38. Pierce wrote that he was working in the deli when Plaintiff asked, "whose this was,"
28 referring to a $50 bill. *Id.* ¶39. Pierce responded, "I don't know." *Id.*

1    Reed stated that she completed an audit of the cash register till from the deli on August 3,
2    2011, at about 4:13 p.m. and discovered that the till was $50 short. *Id.* ¶40.  Reed reported that
3    she saw Plaintiff walk back and forth past the manager's office as she and McFadden reviewed the
4    video. *Id.* ¶41.

5    McFadden reported that he asked Plaintiff why he waited so long to turn in the $50 and
6    why he put it in his wallet, and that Plaintiff said that he didn't want anything to happen to the
7    money and that was his first chance to turn it in. *Id.* ¶42.  Brandon also reviewed store video of
8    the deli saved from the afternoon of August 3, 2011. *Id.* ¶43.  Based upon the employee
9    statements and store video, Brandon believed that Plaintiff had planned to keep the $50 bill that he
10   found on the deli floor, which was a violation of Safeway's Employee Theft and Found Property
11   policies. *Id.* ¶44.

12   After he had concluded his investigation, Brandon contacted Rossi and district manager
13   Chris Day and informed them of his conclusions. *Id.* ¶46.  Based on Brandon's conclusions, he
14   asked Rossi to interview Plaintiff and, depending on Plaintiff's response, suspend Plaintiff
15   pending further investigation of the incident, or, in the alternative, offer Plaintiff an opportunity to
16   resign rather than face further disciplinary action. *Id.* ¶47.

17   On August 11, 2011, Rossi called Plaintiff to a meeting in Rossi's office, at which time he
18   interviewed Plaintiff about the incident. *Id.* ¶48.  Meredith Turner, an assistant manager was also
19   present. *Id.* ¶49.  Rossi explained that Plaintiff was suspected of violating Safeway's Found
20   Property policy and told Plaintiff that he could be suspended pending further investigation and/or
21   terminated, or that he could resign. *Id.* ¶50.  Plaintiff wrote out a resignation. *Id.* ¶51.  At the
22   meeting, Plaintiff did not mention the onset of his WPW symptoms as an explanation for the delay
23   in returning the money when Rossi interviewed him at the meeting. *Id.* ¶52.  Plaintiff told Rossi
24   for the first time that the onset of his WPW symptoms was the reason for the delay in returning the
25   money the next day when he returned to the store to pick up his paycheck. *Id.* ¶53.

26   The deli clerk position that Plaintiff held during his employment was covered by a
27   collective bargaining agreement between Defendant and United Food and Commercial Workers
28   International Union, Local 8. *Id.* ¶54.  Plaintiff was a member of the union during his employment

4

1  as a deli clerk with Defendant, and his employment was under the collective bargaining agreement
2  between Defendant and Local 8. *Id.* ¶55.

3  Plaintiff contacted his union after he resigned. *Id.* ¶56. The union investigated the
4  incident, but decided not to file a grievance because there was not sufficient evidence to
5  substantiate Plaintiff's claim that he had been forced to resign. *Id.* ¶57.

6  Defendant has in place express written policies against discrimination, including
7  discrimination on the basis of disability. *Id.* ¶58. Those policies contain express prohibition
8  against disability discrimination, violation of which can result in corrective action including
9  termination. *Id.* ¶59. Defendant's anti-discrimination policies provide several means by which
10 employees can raise and resolve alleged employment discrimination and retaliation, including
11 contacting Human Resources, union representatives, or anonymously calling a toll free hotline.
12 *Id.* ¶60. Defendant's employees and managers, including Rossi, received training in those
13 programs. *Id.* ¶62. Plaintiff acknowledges that he was aware of Defendant's anti-discrimination
14 policies. *Id.* ¶63.

15 On October 18, 2012, Plaintiff filed this action in Sonoma County Superior Court,
16 asserting claims for: (1) breach of express and implied contracts not to terminate without good
17 cause; (2) disability discrimination; (3) failure to take preventative action; (4) failure to engage in
18 interactive process; (5) failure to make reasonable accommodation; (6) discrimination in violation
19 of public policy; (7) discrimination in violation of public policy; and (8) defamation. Compl. 10-
20 21. Defendant now moves for summary judgment on each of Plaintiff's claims.

### III. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be

drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Id*.

## IV. DISCUSSION

As indicated above, Plaintiff's first cause of action is for breach of express and implied contract and his sixth cause of action is for discrimination in violation of public policy. In his Opposition, Plaintiff voluntarily dismisses these claims. Opp. at 1. Accordingly, the Court turns its attention to the six remaining claims.

### A. Claim Two: Disability Discrimination

In his second claim, Plaintiff asserts that Defendant intentionally discriminated against him on the basis of his disability when he was terminated from his employment, in violation of

California's Fair Employment and Housing Act ("FEHA"), California Government Code § 12900 *et seq*. Compl. at 11-12. FEHA is California's principal law banning employment discrimination, and it prohibits discrimination in the workplace on the basis disability, among other classifications. Cal. Gov. Code § 12940(a). Disability discrimination claims under FEHA follow the burden-shifting analysis applicable to federal employment discrimination claims articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guz v. Bechtel Nat'l, Inc*. 24 Cal. 4th 317, 354 (2000). Under this framework, the plaintiff must first establish a *prima facie* case of disability discrimination; the burden then shifts to the employer to demonstrate a "legitimate, nondiscriminatory reason" for the challenged action; and finally the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Snead v. Metro. Prop. & Cas. Ins. Co*., 237 F.3d 1080, 1093 (9th Cir. 2001). The Court therefore turns to this three-part analysis.

    1.    <u>Plaintiff's *Prima Facie* Case</u>

At the initial stage, to establish a *prima facie* case of disability discrimination, Plaintiff must prove he: (1) suffered from or was regarded as suffering from a disability; (2) could perform the essential functions of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of his disability. *Guz*, 24 Cal. 4th at 354. The burden at this stage is not onerous, and the evidence necessary to satisfy it is minimal. *Id*.; *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010). Essentially, a plaintiff must show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion. . . ." *Sandell*, 188 Cal. App. 4th at 310 (quoting *Reid v. Google*, 50 Cal. 4th 512, 520 fn. 2 (2010)). "While the elements of a plaintiff's *prima facie* case can vary considerably, generally an employee need only offer sufficient circumstantial evidence to give rise to a reasonable inference of discrimination." *Id*. (citing *Hersant v. Cal. Dep't. of Soc. Servs.*, 57 Cal. App. 4th 997, 1002 (1997)).

Defendant does not raise any challenges as to the first two elements of Plaintiff's *prima facie* case. Mot. at 12. However, it argues that Plaintiff has not and cannot identify sufficient

1   evidence to meet his burden of showing that he was discriminated against "because of" his
2   disability. *Id*. Defendant points out that it is undisputed that Plaintiff found a $50 bill and delayed
3   turning the money over to his supervisor, which Defendant's Loss Prevention investigator
4   determined to be evidence of Plaintiff's intention to keep the money, thereby constituting a
5   violation of Defendant's Found Property policies. *Id*. Defendant thus argues that the action taken
6   against Plaintiff was because of his violation of the Found Property policy, and not because of his
7   disability. *Id*.

8   In his Opposition, Plaintiff does not dispute that he delayed in turning in the money. Opp.
9   at 11-12. However, he asserts that the 30-minute delay was caused by an onset of WPW
10  symptoms, which required him to perform the Vaso-Vagal maneuvers until his symptoms were
11  under control. *Id*. Thus, Plaintiff argues that Defendant's action against him was ultimately
12  because of his disability.

13  In support of its position, Defendant argues that in *Wills v. Superior Court*, 195 Cal. App.
14  4th 143, 161-67 (2011), the California Court of Appeal rejected the Ninth Circuit's view that in all
15  cases, "conduct resulting from a disability is considered to be part of the disability rather than a
16  separate basis for termination." Mot. at 13. It argues that *Will*s holds that "in the narrow context
17  of threats or violence against coworkers," an employer may distinguish between the misconduct
18  and the disability in responding to the employee's actions. *Id*. at 165-66. In reaching its decision,
19  the *Wills* court relied on the EEOC's Enforcement Guidance on the Americans with Disabilities
20  Act and Psychiatric Disabilities, which provides that an employer may discipline an employee for
21  violating a workplace conduct standard if the misconduct resulted from a disability, so long as

> the workplace conduct standard is job-related for the position and is consistent with business necessity. For example, nothing in the ADA prevents an employer from maintaining a workplace free of violence or threats of violence, or disciplining an employee who steals or destroys property. Thus, an employer may discipline an employee with a disability for engaging in such misconduct if it would impose the same discipline on an employee without a disability.

27  *Id*. at 164 (emphasis added).
28  Defendant argues that under the EEOC Guidelines relied on in *Wills*, when misconduct in

8

question involves a workplace rule governing attempted theft, the misconduct may be separated from the disability, even if the employee asserts that his disability caused the misconduct. Mot. at 13. It thus argues that Plaintiff cannot establish a *prima facie* case of disability discrimination because he did not suffer any adverse employment action "because of" his disability. *Id*.

The Court agrees with Defendant. Consistent with the reasoning in *Wills* and the EEOC Guidelines cited therein, Defendant established a uniform policy regarding Found Property and took action against Plaintiff for suspected violation of that policy. Although Plaintiff contends that the delay in turning in the money was caused by his disability, there is no evidence that Defendant considered or was aware of the fact that he was experiencing WPW symptoms when it made its decision to take action against Plaintiff. The Court therefore finds that Plaintiff cannot satisfy this element of the *prima faci*e case. His claim is therefore subject to dismissal on this basis.

2. <u>Defendant's Legitimate, Non-Discriminatory Reason</u>

Assuming that Plaintiff can establish a *prima facie* case, the second stage of the analysis requires Defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action. *Raytheon*, 540 U.S. at 49 n.3. Here, Defendant contends that it offered Plaintiff the option of resigning or facing disciplinary action because it found that he had violated the company's Found Property policies by failing to immediately return the money. Mot. at 14. It contends that the record evidence establishes that it had workplace rules providing that any found property was presumed to be property of Defendant and to be returned to management, and that Plaintiff violated this policy when he found and delayed turning in the $50 bill. *Id*.

In support, Defendant argues that courts have recognized that suspected employee theft is a legitimate non-discriminatory basis for termination. *Id.* (citing *Garcia v. Amerisource Bergen*, 2011 WL 2038552, at *9 (E.D. Cal. 2011) (finding that employer's belief that employee had stolen drugs on two occasions was a legitimate, non-discriminatory reason for the employee's discharge)).

Plaintiff, however, argues that there is no evidence that he stole anything. Opp. at 13. Rather, Plaintiff contends that the evidence demonstrates that he returned the money. *Id*. Plaintiff

9

thus asserts that Defendant cannot show that its reason was nondiscriminatory and legitimate. *Id.*

In *Bigeur v. Safeway, Inc.*, 1998 WL 928389, at *6 (N.D. Cal. Dec. 31, 1998), the plaintiff asserted FEHA claims for race and age discrimination against Safeway after he was terminated for violating Safeway's policy for employee returns. The district court found that Safeway had met its burden of articulating a legitimate, non-discriminatory reason for the plaintiff's termination by presenting evidence that it made the decision to terminate the plaintiff based on a Safeway security investigation into the plaintiff's alleged violation of a store policy and/or theft of store merchandise. *Id.* at 6. Specifically, the court found:

> Defendant has shown that its employee, Bill Lash, made the decision to terminate plaintiff based on a Safeway security investigation into plaintiff's alleged violation of store policy and/or theft of store merchandise. After the June 4-5, 1996 incident, plaintiff was suspended pending an investigation. Only after the investigation was complete, which included interviewing Safeway employees on duty that night, did Lash actually terminate plaintiff. Based on the numerous declarations of these Safeway employees and what they saw on that night, the court finds that defendant has clearly proven that a legitimate, nondiscriminatory reason existed for plaintiff's discharge.

*Id.* The same analysis applies here. The undisputed evidence establishes that Defendant's decision to ask Plaintiff to resign or face suspension action occurred only after it completed an investigation into Plaintiff's suspected violation of its Found Property policy, which included interviewing other employees working at the time of the incident, as well as reviewing video footage. The Court therefore finds that Defendant has articulated a legitimate, non-discriminatory reason for its action toward Plaintiff.

3. Pretext for Unlawful Discrimination

Once the employer establishes a legitimate, non-discriminatory reason for its employment decision, the burden shifts to the plaintiff to produce "substantial responsive evidence," that the proffered reason was merely a pretext for discrimination. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1735 (1994). "An employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." *Guz*, 24 Cal. 4th at 361.

10

Here, Plaintiff has failed to produce sufficient facts to allow a rational trier of fact to conclude that Defendant's proffered reason for its action is false or that the true reason is discriminatory. *See Bigueuer*, 1998 WL 928389, at *6. At most, Plaintiff relies on his statements that the delay in turning in the money was due to the onset of WPW symptoms. However, this does not demonstrate that Defendant's basis for calling on Plaintiff to resign for violation of its Found Property policy was untrue or actually targeting him because of his disability. Plaintiff has thus failed to adduce sufficient evidence to carry his burden at this stage of the burden-shifting analysis. His claim for disability discrimination is therefore subject to dismissal on this basis as well.

### 4. Conclusion

In sum, because Plaintiff cannot establish a *prima facie* case of discrimination, and even assuming that he could, Defendant has articulated a legitimate, non-discriminatory reason for the adverse employment action, which Plaintiff has not rebutted. Plaintiff's claim for disability discrimination fails. Defendant is therefore entitled to summary judgment on this claim.

### B. Claim Three for Failure to Take Preventative Action

In his third claim, Plaintiff asserts that Defendant failed to take all reasonable steps necessary to prevent discrimination and harassment from occurring because of his disability in violation of Government Code section 12940(k). Compl. ¶¶ 63-70. This section makes it unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). Defendant moves for summary judgment on this claim, arguing that because Plaintiff has failed to establish an underlying, actionable claim for discrimination, there is no basis to support a claim under section 12940(k). Mot. at 18. The Court agrees. Numerous courts have recognized that to maintain a claim for violation of section 12940(k), a plaintiff must establish that he was subjected to discrimination or harassment. *See Nasser v. AT&T Corp.*, 2007 WL 1119203, at *10 (N.D. Cal. Apr. 16, 2007) ("Because the court has found no viable claim of discrimination and that the single incident of harassment is not sufficiently severe and pervasive to be actionable, there can be no independent cause of action for failure to prevent discrimination or harassment under FEHA.") (citing

*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002); *Ruiz v. Sysco Corp.*, 2011 WL 3300098, at *6 (S.D. Cal. July 29, 2011); *Yoshimoto v. O'Reilly Auto., Inc.*, 2013 WL 6446249, at *16 (N.D. Cal. Dec. 9, 2013) (finding that "in the absence of any viable claims for discrimination or harassment, this failure to prevent claim must also fail."). Because Plaintiff has failed to establish a claim for discrimination, his claim under section 12940(k) necessarily fails, as well. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on this claim.

### C. Claim Four: Failure to Engage in the Interactive Process

Plaintiff's fourth claim is for failure to engage in the interactive process in violation of Government Code section 12940(n). Compl. ¶¶71-80. FEHA requires an employer to "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). Defendant moves for summary judgment on this claim on the ground that Plaintiff has failed to present any evidence showing that he requested an accommodation prior to his resignation. Mot. at 22. Defendant contends that, to the contrary, it is undisputed that while Plaintiff informed Rossi at his initial job interview of his medical condition, he represented that it would not interfere with his job performance. *Id*. In his Opposition, Plaintiff concedes that he "did not attempt to discuss his disability and accommodation" until after he resigned. Opp. at 19. Nevertheless, he maintains that even at that time, Defendant was unwilling to engage or offer him his requested accommodation, namely, reinstatement. *Id*. at 19-20. The Court, however, agrees with Defendant. As indicated above, reinstatement is not recognized as a reasonable accommodation and, in any event, there is no dispute that Plaintiff never made any request for an accommodation until after he resigned from his position. Under California law, "I[t] is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." *Spitzer v. Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (internal quotation marks omitted). As Plaintiff never requested an accommodation during his employment, Defendant's obligation to participate in the interactive

12

process was not triggered, and thus, no violation occurred. Further, Plaintiff has failed to cite any authority indicating that an employer is required to engage in the interactive process *after* an employee ends his employment. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on this claim.

### D. Claim Five: Failure to Provide Reasonable Accommodation

In his fifth claim, Plaintiff asserts that Defendant failed to provide reasonable accommodation for his disability in violation of Government Code section 12940(m). Compl. ¶¶ 81-90. This section of FEHA makes it unlawful, [f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m). Defendant moves for summary judgment on this claim, arguing that Plaintiff has failed to come forward with any evidence demonstrating that he requested an accommodation of his WPW prior to his resignation. Mot. at 20. Rather, Defendant argues that Plaintiff testified that accommodation "was not an issue." *Id*. (citing Rossitto Dep. at 52:17-53:2, Def.'s Supporting Evid., Ex. 2(A)). Plaintiff does not dispute that he did not request any accommodation prior to his resignation; however, he argues that he requested to be reinstated, which Defendant denied. Opp. at 18-19. As Defendant correctly notes, reinstatement is not recognized as a reasonable accommodation under California law. *Brundage v. Hahn*, 57 Cal. App. 4th 228, 239-40 (1997). Because Plaintiff did not request any other reasonable accommodation prior to his resignation, there is no basis to support his claim for violation of section 12940(m). The Court therefore **GRANTS** summary judgment in favor of Defendant on this claim.

### E. Claim Seven: Violation of Public Policy

Plaintiff's seventh claim is for discrimination in violation of public policy. Compl. ¶¶ 104-112. Under California law, an exception to the employment at-will doctrine is recognized where the employee's termination was the result of a violation of the fundamental principles of public policy. *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980). In such cases, "the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id*. To prevail on a claim for wrongful discharge in violation of public policy, a plaintiff must

establish that: (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of public policy was a motivating reason for the termination; and (4) the termination was the cause of plaintiff's damages. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004). Defendant contends that because Plaintiff's FEHA claim fails, there is no underlying violation of public policy to support this claim. The Court agrees. A violation of FEHA may support a *Tameny* claim. *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159-60 (1998). However, if an underlying FEHA claim fails, "any claim for wrongful discharge in violation of the public policy embodied in those claims fails." *Her v. Career Sys. Devel. Corp.*, 2009 WL 4928395, at *9 (E.D. Cal., Dec.14, 2009). Thus, to the extent Plaintiff's seventh claim for wrongful termination relies on violations of FEHA, such claim fails to state a claim for the reasons articulated above. *See Peterson v. U.S. Bancorp Equip. Fin., Inc.*, 2010 WL 2794359, at *6 (N.D. Cal. July 15, 2010). Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on this claim.

**F.  Claim Eight: Defamation**

Plaintiff's eighth claim is for defamation. Compl. ¶¶113-123. He alleges that Rossi falsely told him that he was discharged for attempted theft and other employees, including Assistant Store Manager Meredith Turner, heard this statement and understood it to be derogatory of him and damaging to his reputation and esteem. *Id*. ¶¶115-16. He alleges that Rossi knew or should have known that the statement was false and was made without reasonable grounds for belief in its truth and without adequate investigation. *Id*. ¶117.

Under California law, the elements of a defamation claim are: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Defendant argues that it is entitled to summary judgment on this claim because the alleged statement was privileged. Mot. at 23. "Under the 'common-interest privilege,' codified in California in Civil Code section 47, subdivision (c) . . . a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made 'without malice.'" *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1196 (1994) (footnote omitted). "Courts have consistently

interpreted section 47, subdivision (c) to apply in the employment context." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App.4th 1363, 1369 (2003) (citation omitted). Particularly, an employer's statements to employees regarding the reasons for termination of another employee generally are privileged. *King v. United Parcel Serv., Inc.* 152 Cal. App. 4th 426, 440 (2007); *Cuenca v. Safeway San Francisco Employees Fed. Credit. Union*, 180 Cal. App. 3d 985, 995 (1996). Thus, the Court agrees with Defendant that the statement at issue falls within the scope of the common interest privilege. Nevertheless, Plaintiff argues that the privilege does not apply because the statement was made with malice. Opp. at 22-23. Plaintiff has failed to identify evidence to make such a showing. At most, Plaintiff contends that Rossi lacked reasonable grounds to believe that Plaintiff had stolen anything from Safeway or that he violated any Safeway policy concerning theft or found property. *Id*. Plaintiff, however, proffers no evidence in support of his assertion and the record evidence establishes the contrary. As indicated above, it is undisputed that Defendant undertook an investigation, which included interviewing employees and reviewing video footage, before taking any action against Plaintiff. There is no basis to find that the statement was made with malice and thus outside the scope of the common interest privilege. Accordingly, Plaintiff's defamation claim fails and the Court **GRANTS** summary judgment in favor of Defendant on this claim.

## V.     CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment as to all of Plaintiff's claims.

The Court of Court is directed to enter judgment for Defendant and close this action.

**IT IS SO ORDERED.**

Dated: March 17, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge